## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TEVIN SHAQUILLE GRAHAM,

    **Plaintiff,**

    v.

                             **Civil Action No.: JKB-25-1147**

**DIRECTOR WALT PESTERFIELD,
C.O. SEKAI WARR,
SGT. HENRY WESTCOTT,**

    **Defendants.**

## MEMORANDUM

In response to the above-entitled civil rights complaint, Defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment. (ECF No. 9.) Self-represented Plaintiff Tevin Shaquille Graham[1] opposes the motion. (ECF No. 12.) A hearing is unnecessary. Loc. R. 105.6 (D. Md. 2025). For the reasons discussed below, Defendants' Motion will be granted in part and denied in part.

## I.  BACKGROUND

### A.  Graham's Allegations

Graham, who at all relevant times was detained at the Baltimore County Detention Center ("BCDC") in Towson, Maryland, claims that on March 19, 2025, Officer Warr sprayed him in the face and upper chest with Oleoresin Capsicum ("OC") spray without cause. (ECF No. 1 at 3.) Graham explains that Warr entered the unit to begin meal distribution at around 5:20 p.m. but

---

[1] Graham also filed a Motion to Appoint Counsel, stating that he believes his case has merit and his access to legal materials are limited due to his incarceration. (ECF No. 7.) There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a pro se litigant has a "colorable claim" but "lacks the capacity to present it." *Jenkins v. Woodard*, 109 F.4th 242, 248 (4th Cir. July 22, 2024) (internal citation omitted). Graham has capably presented his claim without assistance of counsel, and at this stage, there is no reason to believe that he lacks the capacity to further present it. Accordingly, the Motion will be denied.

immediately began screaming and cursing at the inmates on the unit. (*Id.*) As Graham was making his way to his cell, he noticed that Warr was becoming irate with another inmate on the unit who was doing push-ups. (*Id.*) Graham observed Warr remove her OC spray from her belt and shove it into the inmate's face while he was down on the ground doing push-ups, threatening to spray him with it. (*Id.*) Graham recalls that as soon as Warr left that inmate, she walked over to Graham and said, "'oh, fuck this shit,'" pointed the OC spray at his face, neck and upper chest, and sprayed Graham. (*Id.* at 4.)

Graham maintains that he never provoked Warr, nor did he refuse any orders to lock-in. (*Id.*) He claims that Warr included false information in her Report of Incident when she stated that he was "becoming aggressive and following [her] around the unit." (*Id.*) Graham states that on March 27, 2025, during "3rd tour meal distribution," Warr came to his cell door and gave him two extra apple juices, explaining, "this is for macing you, sorry." (*Id.*) After doing so, he claims Warr walked away. (*Id.*)

Graham states that Sgt. Westcott was the shift supervisor during the incident on March 19, 2025. (*Id.*) Graham claims that even after Westcott reviewed the video surveillance verifying that Graham did not become aggressive with Warr before she sprayed him with OC spray, Westcott signed off on a "fabricated report" and placed Graham on disciplinary segregation. (*Id.*) Graham additionally asserts that Westcott violated his constitutional rights and failed to supervise Warr. (*Id.*)

Graham alleges that Director Walt Pesterfield is responsible for all of his staff and is liable for failure to supervise and to train. (*Id.*) He adds that BCDC and its staff fail to follow "local policy and best practices" which, in Graham's view, "demonstrates systemic failures." (*Id.* at 4–5.)

Graham includes a copy of the Report of Incident with his Complaint. (ECF No. 1-1.) The report, which was written by Defendant Warr, states that Warr had given orders to the individuals in the housing unit to lock into their assigned cells. (*Id.*) According to the report, Graham "refused all orders and kept arguing with Officer Warr." (*Id.*) Although Graham was assigned to Cell 4, he told Warr he was going into Cell 20. (*Id.*) As Warr was securing "the remaining cell doors," she claims that Graham became aggressive and started following her around the unit. (*Id.*) She states that Graham said he was not locking in and that he began walking toward her. (*Id.*) The report further states that although Warr ordered Graham to "back off and lock in," Graham ignored the orders and Warr dispersed a burst of OC spray towards Graham's upper torso area. (*Id.*)

## B.    Defendants' Response

### 1.    Officer Sekai Warr

Warr states that on March 19, 2025, she started her shift around 3:00 p.m. and worked until 11:15 p.m. (ECF No. 9-3 ¶ 6.) When she entered housing unit 3A—where Graham was housed—to begin distribution of a meal at 5:20 p.m., she "called everyone to lock-in so we could start meal distribution." (*Id.* ¶ 7.) Housing unit 3A has a total of 20 cells with cells 1–10 located on the lower level and the remaining cells located on the upper level. (*Id.*) Graham's cell, cell 4, was on the same level where Warr had entered the housing unit. (*Id.*)

Warr claims that when she entered the unit, Graham was walking down the stairs towards her, telling her that he would not enter his cell. (*Id.* ¶ 8.) Warr continued to do rounds, checking to make sure everyone else was locking in. (*Id.*) When Warr went upstairs, Graham still refused to lock into his cell and followed her up the stairs. (*Id.*)

Warr recalls that when she once again ordered Graham to return to his cell and lock in, he continued to follow her around on the upper tier and, at one point, stated that "'I should smack the

3

shit out of you.'" (*Id.* ¶ 9.) As Graham continued to follow Warr around, she again ordered him to back off and lock in, but he refused. (*Id.*) When Warr advised him that he would be sprayed if he did not comply with orders, Warr claims that Graham told her, "'Bitch, I don't give a shit about the mace.'" (*Id.*) Because Graham kept getting closer to Warr, she was afraid he was going to assault her, so she dispersed OC spray in his face. (*Id.*)

### 2.    Sgt. Henry Westcott

Sgt. Westcott states that as responding supervisor, his role in the March 19, 2025, incident was limited to investigating the incident, interviewing Graham, and determining whether he needed to be moved to a different housing unit. (ECF No. 9-4 ¶¶ 7–8.) The result of his investigation, as documented in the Report of Incident submitted with his declaration, determined that Graham violated various BCDC policies, requiring his transfer to administrative restrictive housing while awaiting a disciplinary hearing. (*Id.* ¶ 9.)

The Report of Incident shows that Graham was charged with: (1) interfering with correctional staff; (2) failing to obey an order of a correctional officer; (3) failing to cooperate with count or lock-in; (4) curse or abuse to correctional employee or inmate; and (5) being found in unauthorized area. (*Id.* at 3.) Graham was interviewed by Westcott and denied everything. (*Id.*) He was then evaluated by a nurse and cleared to be transferred to restrictive housing to await his hearing on the disciplinary charges. (*Id.*) On March 21, 2025, Graham was found guilty of the first three charges and not guilty of the last two. (*Id.* at 4.) He was assigned to ten days of restrictive housing as a result. (*Id.*)

## II.    STANDARD OF REVIEW

Defendants' motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Ordinarily, a court "is not to

consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, in deciding a Rule 12(b)(6) motion, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). As to the first requirement, when the movant expressly captions its motion as one for summary judgment "in the alternative" and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). As for the second requirement, to show that he has not received a reasonable opportunity for discovery, the nonmovant ordinarily must present an affidavit under Rule 56(d) which shows that, "for specified reasons," he "cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d). However, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002) (internal citations omitted). Indeed, "even in the affidavit's absence, a district court abuses its

5

discretion by granting summary judgment when it otherwise has fair notice of potential disputes as to the sufficiency of the summary judgment record." *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (cleaned up). And "[s]uch premature summary judgment is particularly disfavored in the context of pro se litigation." *Id.* at 128–29.

Graham has not filed an affidavit in compliance with Rule 56(d). However, in his response to the Motion, he claims that "video footage" of the incident "will prove and show" that Officer Warr assaulted him with mace. (ECF No. 12 at 1–2.) Thus, as to the excessive force claim against Officer Warr, there is a "potential dispute as to the sufficiency of the summary judgment record." *Shaw*, 59 F. 4th at 128. Accordingly, the Court will evaluate this claim under the Rule 12(b)(6) standard. But this video footage is not relevant to the supervisory liability claims against Sgt. Westcott and Director Pesterfield. Thus, those claims will be evaluated under the Rule 56 standard.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662.

When considering a motion under Rule 56(a), summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308,

6

313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted). Because Graham is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## III. DISCUSSION

### A. Supervisory Liability

Graham's claims against Director Pesterfield and Sgt. Westcott rely on a theory of respondeat superior as a basis for their liability. However, liability under 42 U.S.C. § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023). Rather, to receive summary judgment on these claims, a supervisor must show that there is no genuine dispute of material fact as to whether (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit

7

authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Here, Westcott has submitted an affidavit in which he explains that he investigated the incident and filed a report about it. Meanwhile, Graham has made only vague allegations of failures to train and to supervise as a basis for his claims. He has presented no evidence that the supervisors knew that Warr's conduct could pose an unreasonable risk of constitutional injury, nor has he shown a causal link between the supervisors' inaction and his alleged injury. Accordingly, Defendants Pesterfield and Westcott are entitled to summary judgment.

### B.    Excessive Force

At the time of the incident, Graham was a pre-trial detainee being held on a charge of violation of probation. (*See* ECF No. 9-2 at 2.) Thus, his excessive force claim lies in the Fourteenth Amendment. Unlike Eighth Amendment claims, Fourteenth Amendment excessive force claims do not include a subjective component. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). This means that it is enough that a pretrial detainee shows that the "force purposely or knowingly used against him was objectively unreasonable," *id.* at 397, regardless of an officer's state of mind, *id.* at 395. The Court must therefore consider whether under the "facts and circumstances" of this particular case, viewed from the "perspective of a reasonable officer on the scene," the force used against Graham was objectively excessive. *Id.* at 397.

Here, Graham alleges that, without provocation, Officer Warr sprayed his face and upper body with OC spray. Graham further alleges that Officer Warr's incident report—in which she stated that she sprayed Graham after he became aggressive with her—was false. In cases in which

8

pretrial detainees allege that OC spray was used on them without justification, courts routinely find that these detainees state a claim under the Fourteenth Amendment. *See, e.g., Dunbar v. Lakanse*, No. 25-CV-1509-LKG, 2026 WL 371077, at \*4–5 (D. Md. Feb. 10, 2026); *Chafin v. Caudill*, No. 2:24-CV-00135, 2025 WL 1403557, at \*2, 6 (S.D.W. Va. May 14, 2025). Thus, taking Graham's allegations as true and drawing all reasonable inferences in his favor, Graham has stated a claim for excessive force under the Fourteenth Amendment. However, the only discovery that Graham has argued is "essential to justify [his] opposition" to summary judgment, Fed. R. Civ. P. 56(d), is the video footage of the incident. And the Court agrees that this footage should determine whether Graham's claim against Officer Warr is viable. Accordingly, the Court will order only limited discovery of the video footage of the March 19, 2025, incident to Graham, and it will deny Warr's motion without prejudice subject to re-filing after the video has been produced.

### C.    Qualified Immunity

Finally, Officer Warr argues that she is entitled to qualified immunity. "Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018)). But the Fourth Circuit has explained that the unprovoked use of OC spray can constitute excessive force. *Dean v. Jones*, 984 F.3d 295, 303–04 (4th Cir. 2021). Thus, at this stage of the litigation, Graham has alleged facts sufficient to show that the unlawfulness of Officer Warr's conduct was clearly established. However, Officer Warr may reassert the qualified immunity defense at a later stage, as appropriate.

**IV.   CONCLUSION**

By separate Order which follows, Defendants' Motion (ECF No. 9) will be granted as to the claims against Director Pesterfield and Sgt. Westcott and denied without prejudice as to the claim against Officer Sekai Warr.  Graham's Motion to Appoint Counsel (ECF No. 7) will be denied.

Dated this ___ day of February, 2026.

FOR THE COURT:

James K. Bredar
United States District Judge

10